**MICHIGAN HOSPITAL ASSOCIATION, a nonprofit Michigan corporation; Children's Hospital of Michigan, a nonprofit Michigan corporation and Edward W. Sparrow Hospital Association, a nonprofit Michigan corporation; individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**DEPARTMENT OF SOCIAL SERVICES, an agency of the State of Michigan; and Noble P. Kheder, Director of the Department of Social Services; Department of Health and Human Services, an agency of the United States; and Richard S. Schweiker, Secretary of the Department of Health and Human Services, Defendants.**

Civ. No. 82–73279.

United States District Court, E.D. Michigan, S.D.

Jan. 7, 1983.

Honigman, Miller, Schwartz & Cohn, James K. Robinson, Detroit, Mich., for plaintiffs.

William K. Basinger, Lansing, Mich., Karl Overman, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THORNTON, District Judge.

Jurisdiction for the matter under consideration is based on a federal question arising under Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., known as "Medicaid", as well as a civil rights claim under 42 U.S.C. § 1983, for which jurisdiction is conferred by 28 U.S.C. § 1343(3), and the Fourteenth Amendment to the United States Constitution. Plaintiffs have also asserted pendent claims based on state law.

On September 1, 1982, plaintiffs, Michigan Hospital Association, Children's Hospital of Michigan and Edward W. Sparrow Hospital Association, filed this as a class action on behalf of all Michigan Hospitals which participate in the Michigan Medicaid Program, challenging certain cost containment measures, specifically a "fee-for-service policy," effective September, 1982 and issued in Executive Order 1982–4 by the Governor of the State of Michigan.

The parties have stipulated: that the State of Michigan has experienced actual state revenue shortfalls below revenue estimates for the 1982 fiscal year; that these revenue shortfalls have required that the state develop and implement cost containment measures for the Medicaid program; that 1981 P.A. 35, § 48(5) directed development of such measures; that contained in Governor Milliken's Executive Order 1982–4 was the following provision:

> Effective September 1, 1982, the Department of Social Services shall adopt a policy of reimbursement on a fee-for-service basis for out-patient hospital services provided under the Medical Assistance Program.

Plaintiffs' Motion for Summary Judgment was heard and taken under advisement on December 16, 1982. Plaintiffs' federal law claims for summary judgment include: (1) that the fee-for-service policy fails to satisfy the requirements of 42 U.S.C. § 1396a(a)(13)(A) for payment of hospital services under State Medicaid programs; (2) that in excluding payment to the hospital for facility costs in the case of Attachment 2 services, the policy violates federal requirements that payment be made to hospitals for the provision of all outpatient services under state Medicaid programs[1]; and (3) Michigan implemented the new reimbursement policy without adequate public notice as required under 42 CFR § 447.205.

### A.

The statutory basis of plaintiffs' first federal claim rests with the federal requirements of a State Medicaid Plan. Plaintiffs contend that the Medicaid reim-

---

[1]. Summary judgment on this issue is inappropriate at this time as this Court has been advised that Michigan has notified the Health Care Financing Administration that it will revise the fee-for-service policy so as to pay a hospital a facility component fee for the "Attachment 2" Services, and will issue a clarifying Bulletin which will allow for appropriate recognition of overhead expenses of the outpatient hospital. See stipulation, infra.

bursement rates for outpatient services must meet the standards set forth in 42 U.S.C. § 1396a(a)(13)(A) (1981)[2] and implementing regulations, 42 CFR § 447.250 *et. seq.* Plaintiff relies on the fact that Michigan has failed to make the findings and assurances required by the statute.

The weight of authority and reasoning warrants denial of this claim as this Court is not persuaded that these requirements apply to outpatient services. While § 1396a(a)(13)(A) itself refers to "hospital" services and does not distinguish between inpatient and outpatient services, legislative history and case law convince this Court that the provision's requirements refer to *inpatient services.*

A review of the House Conference Report on Hospital Reimbursement rate determination under Pub.L. No. 97–35 makes clear that both the House bill and Senate Amendment referred to State payments for inpatient hospital services. The Conference Committee followed the Senate Amendment, which required that State payments for inpatient hospital services be "reasonable and adequate to meet the costs which must be "incurred by efficiently and economically operated facilities" in order to meet applicable laws and quality and safety standards, with a modification providing that states, in developing their payment rates, take into account the situation of hospitals which serve a disproportionate number of low income patients. House Conference Report no. 97–208, at 962–963, reprinted in U.S.Code Cong. & Admin.News 396, 1324–1325 (1981).

In *Charleston Memorial Hospital v. Conrad,* CCH Medicare/Medicaid Guide ¶ 31,958 (D.C.S.C. April 16, 1982) Plaintiff Hospital Association and two South Carolina residents brought an action against the South Carolina Department of Social Services and the Secretary of Health and Human Services challenging certain administrative actions reducing Medicaid coverage. In its analysis of plaintiffs' claims, the Court stated that "[i]t is clear from the legislative history of Section 1396a(a)(13)(A) that the amendment was intended by Congress to reduce the level of reimbursement paid by the states for hospital inpatient services" ¶ 31,958 at 9648, *aff'd* 693 F.2d 324 (4th Cir.1982), citing H.Rep. No. 158, 97th Cong. 1st Sess. *reprinted in* 4 CCH Medicare and Medicaid Guide ¶ 24,486 at 8799–32.

Further, Ms. Helene Stoffey, Medicaid Program Specialist with the Health Care Finance Administration (HCFA), representative for the State of Michigan for the Department of Health and Human Services, in her deposition of October 20, 1982, pointed out that according to HCFA's interpretation, the regulations clarify that only inpatient hospital services are being implemented under § 1396a(a)(13)(A). Dep. of H. Stoffey, Oct. 20, 1982 at 64. Ms. Stoffey indicated that 42 CFR §§ 447.250 through .265 implement § 1396a(a)(13)(A) and refer to payment rates and that the Medicaid Agency must pay for inpatient hospital services and long term care facility services through the use of rates. *Id.* at 89.

She points out further that 42 CFR § 447.321 refers to outpatient Hospital Services and Clinic Services and relates to the upper limits of payments, and that this

**2.** 42 U.S.C. § 1396a(a)(13)(A), as amended and recodified (from 42 U.S.C. § 1396a(a)(13)(D)) by Section 2173 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, provides that the state plan must:

(13) provide...

(A) for payment ... of the *hospital,* skilled nursing facility, and intermediate care facility *services* provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of

low income patients with special needs ... which the State finds and makes assurance satisfactory to the Secretary, are reasonable and adequate to meet the cost which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to *inpatient hospital services* of adequate quality.... [Emphasis added]

section would be the one to which her agency would look in determining whether the method of payment proposed by the State for fee-for-service complies with public regulations. *Id.* at 90. A review of the above regulations reveals this to be a reasonable interpretation. While plaintiffs' argument that two types of hospital services are to be covered by Medicaid is correct, they provide no persuasive support for the proposition that § 1396a(a)(13)(A), in referring to "hospital services" and "inpatient hospital services", in fact, *includes* requirements for outpatient hospital services.

## B

Plaintiffs also challenge the State's published notice of the fee-for-service policy as defective under 42 CFR § 447.205 (1981). The alleged defects include the failure of the notice to adequately describe the fee-for-service policy for those who were not knowledgeable in Medicaid reimbursement policy trends; the failure of the notice to communicate "the key component" to the policy, that no facility charge will be paid in connection with physician procedures which are usually performed in a physician's office; the failure to have a copy of the policy itself as opposed to the public notice, available at local DSS offices upon request; and the misleading nature of the notice where it implies that a fee will be paid for every outpatient hospital service and, in fact, no fee is paid for procedures listed in the Attachment 2. The parties have stipulated:

At the time the Executive Order 1982–4 was approved, it was not possible to estimate the savings associated with the fee-for-service policy because the policy had not been developed sufficiently to permit such an estimate to be made.

Executive Order 1982–4 was approved on April 7, 1982 by the Appropriations Committees of the Michigan Senate and House of Representatives.

On April 14, 1982, MDSS first told the Medical Care Advisory Committee ("MCAC") about the reimbursement change to a fee-for-service methodology for reimbursement of outpatient hospital services in the context of a presentation which reviewed the provisions of Executive Order 1982–4. The minutes of this meeting indicate that the MCAC 'decided it should neither endorse nor oppose the [Executive Order] mandates.' In addition, the outpatient fee-for-service policy was presented at meetings in May, August and September. Each member of MCAC was sent a copy of the draft bulletin implementing a fee-for-service policy on June 18, 1982. The MCAC is composed of at least one representative of the Plaintiffs.

On or about April 29, 1982, MDSS issued a notice to interested parties. [Attached hereto as Exhibit 'A'] This notice indicated that the Medical Services Administration ('MSA') of MDSS was undertaking a number of proposed changes in response to Executive Order 1982–4 and Section 48 of Public Act 35 of 1981. This notice indicated that:

'The Medicaid Program will change hospital reimbursement by reimbursing all outpatient hospital services on a fee-for-service basis, effective September 1, 1982.'

The public notice was published in newspapers in every Michigan city having a population exceeding 50,000 on or about May 2, 1982.

\* \* \* \* \* \*

On June 18, 1982, MDSS, as part of the consultation process and the public notice process, furnished a draft bulletin regarding the fee-for-service policy to each member of the MCAC and all providers on the consultation list.

\* \* \* \* \* \*

On July 26, 1982, MDSS issued Bulletin No. 5360–82–07 ('Bulletin') regarding the outpatient fee-for-service policy to be effective September 1, 1982.

On or about August 11, 1982, MDSS submitted a proposed amendment to the Michigan State Plan to Region V of HCFA to implement the fee-for-service policy. On September 24, 1982, a revised State Plan amendment was submitted to HCFA which incorporated a limitation

requested by HCFA, that MDSS would not exceed the Medicare reimbursement levels in its implementation of the fee-for-service policy.

Effective September 1, 1982, the Medicaid program changed the method for reimbursing hospitals for outpatient hospital services. For dates of service on or after September 1, 1982, hospitals were to be paid in accordance with the provisions approved in the State Plan Amendment and described in the Medical Assistance Program Bulletin No. 5360-82-07 (the 'Bulletin').

Under federal law, states must submit and have approved by the Secretary of Health and Human Services a state plan which, among other things, sets forth the method for paying hospitals for outpatient hospital services. The State Plan is defined at 42 USC 1396a(a). Federal matching funds are awarded to the State Medicaid program on the basis of the State Plan as approved by HHS.

On November 15, 1982, the Secretary of Health and Human Services approved a State Plan amendment to the method for reimbursing hospitals for outpatient hospital services.

Under the fee-for-service reimbursement methodology as defined by the Bulletin, hospitals were to be paid for outpatient hospital services as follows:

(a) Generally, hospitals are paid the lesser of their actual charge or a fee screen established by the state defendants, or the Medicare limit.

(b) The limitation on reimbursement in paragraph (a) is subject to the following exception:

(i) The Bulletin identifies approximately 700 physician procedures which the state defendants have determined are usually performed in a physician's office.

(ii) Pursuant to the Bulletin, a hospital will not be reimbursed for any facility charge in connection with the rendering of such physician services in an outpatient hospital setting.

(iii) A facility charge constitutes a payment for the use of hospital premises in order to perform the physician procedure, and such facility charge constitutes a mechanism for partial payment of outpatient hospital facilities.

(iv) The making available of hospital premises for the performance of physician services constitutes an outpatient hospital service within the definition of the Medicaid State Plan.

The letter of Noble P. Kheder, Director of MDSS, dated November 2, 1982, commits the state defendants to alter the Bulletin as described in above paragraphs 23(i) and 23(ii) by a clarifying bulletin which provides for some payment directly to hospitals. [Attached as Exhibit B]

■ Plaintiffs' claim primarily goes to the content of the April 29, 1982 Public Notice by the State. [Exhibit A attached] A review of each allegation of defect made, as well as the stipulated facts, convinces this Court that notice was adequate under the regulations. 42 CFR § 447.205(a) (1981), in relevant part requires:

(c) *content of notice.* The notice must

(1) Describe the proposed change in method or level of reimbursement;

(2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;

(3) Explain why the agency is changing its reimbursement methodology or level of reimbursement;

(4) Identify a local agency in each county (such as the Social Services Agency or health department) where copies of the proposed changes are available for public review.

(5) Give an address where written comments may be sent and reviewed by the public; and

(6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

Plaintiffs' allegations which go to the specificity of the notice do not support a conclusion as to these plaintiffs that the above requirements have not been met.

The regulation itself does not specify the degree of detail or comprehensiveness necessary in describing proposed changes in methods of reimbursement. As pointed out in the Federal Defendants' Response to Plaintiffs' Motion, and as supported by the stipulated facts herein, the details and specifics of the fee-for-service policy were communicated to affected parties by bulletins and other notices issued well before the September 1, 1982 implementation date, as well as in meetings with the Michigan Hospital Association and individual hospitals conducted well before September 1, 1982. These factors cannot be ignored when considering the requirements with respect to the named plaintiffs.

Plaintiffs also allege that defendants violated the requirements of 42 CFR 447.-205(c)(4) where the public notice alone, and not a copy of the policy, was made available at local DSS offices. (This fact is supported by the deposition testimony of Vernon K. Smith, Director, Bureau of Program Policy, Medical Services Administration within the Department of Social Services, taken October 7, 1982 at 113, and filed in companion case, 82–73113). The regulation, 447.205(c)(4) requires that a local agency be identified where "copies of the proposed changes are available for public review." The public notice lists the proposed changes and was available at local DSS offices apparently at the time the Notice was published on April 29, 1982, well before the implementation date.

Plaintiffs cite *Jennings v. Alexander,* 518 F.Supp. 877 (M.D.Tenn.1981) to support their challenges to the Public notice as given by the State. In *Jennings* the plaintiffs were all recipients of Medicaid benefits in Tennessee, a state which had proposed reductions in Medicaid coverage for inpatient hospital care from the then current 20 days per year to a proposed maximum of 14 days per year. In that case the Court found that the State's Notice, made available to county DHS offices two weeks before the proposed effective date of changes, had failed to comply altogether with 42 CFR § 447.205 Notice requirements in that the Notice did not include the proposal to limit inpatient hospital coverage to 14 days per year and in fact stated that inpatient care would be limited to 20 days a year. The Court stated:

A concerned Medicaid recipient who had been informed by the newspaper notices that a reduction in inpatient care might be implemented and who desired to learn exactly what changes were contemplated would surely have had his fears falsely allayed by the notice posted in his local DHS office. The only effect of this misinformation would certainly have been to discourage comment on the proposal which otherwise might have been forthcoming. The tactic was in direct contravention of the policy behind the notice requirement of 'foster[ing] complete information to the public as to the cost of medical care to the needy.' *Philadelphia Welfare Rights Organization v. O'Bannon,* 517 F.Supp. 501 (E.D.Penn.1979).

518 F.Supp. at 890. The Court in the *Jennings* case interpreted the regulation to "establish a particular procedure for notifying the public exactly what changes in Medicaid reimbursement procedures are being considered" and that "[t]his procedure includes an opportunity to inspect the text of the proposals which are to be made available in county offices throughout the state." *Id.*

In the instant case it is a stipulated fact that on June 18, 1982, "as part of the consultation and public notice process", the defendant-Michigan DSS issued one of several draft bulletins which outlined in much detail the fee-for-service policy "to each member of the MCAC (which includes at least one representative of plaintiffs) and all providers on the consultation list." (Exhibit 7, plaintiffs' Complaint). If public notice requirements under § 447.250(c)(A) have not been met due to the failure to provide local DSS offices with texts of the fee-for-service policy, it is not a claim which the plaintiffs named herein have standing to assert under the circumstances. The facts stipulated to herein, as well as the fact that plaintiffs herein are the Michigan Hospital Association, and nonprofit hospital-corporations in Michigan and are not Medicaid recipients,

all distinguish the instant case from *Jennings, supra.*

Plaintiffs also allege that the Notice is misleading because "it indicates that a fee will be paid for *all* outpatient hospital services, while in fact under the fee-for-service policy implemented by the Bulletin, no fee is paid to hospitals for facility charges in connection" with Attachment 2 proceedings. This claim is inappropriate for review on the Motion for Summary Judgment due to the fact that the State is to issue a clarifying bulletin which is to assure that outpatient service payments will continue to be made for outpatient services in connection with Attachment 2 proceedings. See footnote 1 supra. We note however that this Court doubts that the Public Notice is in fact misleading to these plaintiffs for the reasons stated above in reference to additional information issued by defendant-DSS before the date of implementation.

Therefore, this Court finds that the defendants have complied with the public notice requirements contained in 42 CFR § 447.250, and Count VI of plaintiffs' Complaint will be dismissed accordingly for failure to state a claim upon which relief may be granted.

## C

■ The Court has reviewed all of the 16 remaining counts in this case and is of the opinion that the issues of state law should be dismissed. In making this determination, the Court finds that of the seven claims of violation of federal law remaining, three may well be affected by the current development of a clarifying Bulletin to be issued by the State. See n. 1 supra. The Department of Health and Human Services has approved the outpatient hospital fee-for-service amendments to the state plan since the filing of this Motion. The nine remaining state law issues appear to substantially predominate the proceedings in this case.

These issues are in an area in which the functioning of state government is clearly implicated—the State's ability to respond to critical budgetary problems that have immediate repercussions. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court noted:

> It has been consistently recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . .
>
> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surefooted reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

383 U.S. at 726–27, 86 S.Ct. at 1139. See, *Shaw Henderson, Inc. v. Schnedier*, 335 F.Supp. 1203, 1218 (W.D.Mich.) *aff'd*, 453 F.2d 748 (6th Cir.1971).

As a matter of comity the Court's interference with state government should be minimized and the state courts should be the tribunals which determine and apply the unlitigated questions of state law raised in this motion and in plaintiffs' Complaint. This principle is particularly compelling in a situation which involves ongoing factual developments in the State legislature and State agencies.[3]

For these reasons, this Court will decline the exercise of jurisdiction over the plaintiffs' State law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Further, plaintiffs' Motion for Summary Judgment will be denied for the reasons

---

**3.** State defendants indicate that a special committee of the Michigan legislature has approved the concept underlying a hospital sponsored alternate Medicaid Payments System (AMPS). Answer to Plaintiffs' Motion for Summary Judgment at 3.

stated herein. An appropriate order will enter dismissing Counts I, VI, and XIX of plaintiffs' Complaint pursuant to this Memorandum, and plaintiffs' State law claims will be dismissed without prejudice.

## EXHIBIT A

### PUBLIC NOTICE

Executive Order 1982–4 and Section 48 of Public Act 35 of 1981, require a decrease in expenditures to be made by the Medicaid Program; therefore, the Michigan Department of Social Services is providing notice of the following cost containment measures to be effective for the dates indicated.

The practitioner's reimbursement from the Medicaid Program will be eliminated or reduced for selected services, effective for dates of service June 1, 1982, and after. The Medicaid Program is also proposing to enforce utilization and reimbursement controls for laboratory services performed in the ambulatory setting. These changes are expected to result in a savings of $2.6 million to the Program.

The sale or resale of a long-term-care facility completed after June 30, 1978, cannot be used to increase the plant cost component until September 30, 1982, and no more often than every five years thereafter. Exceptions to the historical costs limitation for sales made during the first 51 months, or more often than once in five years, will only be allowed for events such as the death of the owner or of a partner or stockholder with an ownership interest of at least 50 percent, or in the case of bankruptcy or receivership. This 90 day extension to the moratorium is expected to result in a savings of $1 million to the Program.

The Medicaid Program will change hospital reimbursement by: (a) reimbursing all outpatient hospital services on a fee-for-service basis, effective September 1, 1982. This change in reimbursement policy will result in a savings of less than $1 million to the Program during the remainder of this fiscal year; (b) incorporating a class-based limitation on operating costs of inpatient hospital services, effective July 1, 1982. This change is expected to result in a savings of $2 million to the Program during the remainder of this fiscal year. Effective November 1, 1982, the Medicaid Program will require continued stay authorization for inpatient hospital stays. The Program has not yet established the parameters for these stays. This change is expected to result in a savings of approximately $1 million to the Program.

Copies of the proposed changes are available for public review at the local department of social services office. Any comments on, or requests for copies of, the proposed changes may be submitted in writing to: Publications Unit, Medicaid Information Division, Medical Services Administration, 921 West Holmes Road, Lansing, Michigan 48910. Written comments may also be reviewed by the public at this address. There is no public hearing scheduled on these changes.

## EXHIBIT B

Noble P. Kheder, Director

November 2, 1982

Barbara J. Gagel
Acting Regional Administrator
Region V
175 West Jackson Blvd.
Chicago, Illinois 60604

Dear Ms. Gagel:

This responds to your letter of October 29, 1982 regarding the State Plan Amendment for the payment of outpatient hospital services on a fee-for-service basis for the Michigan Medicaid program.

Based on conversations with Helene Stoffey of your staff, we are advised that the state plan is approvable, as currently submitted. HFCA's concern, as expressed in the letter, relates to the State's practice in implementing the policy, in regard to the fact that the policy as implemented does not reimburse an outpatient hospital for certain procedures which are usually performed in a majority of physician's offices. We are advised that satisfactory resolution of this issue, insofar as HCFA approval of

the state plan is concerned, can occur if the state clarifies its practice.

Based upon the recent conversations with Helene Stoffey and the concerns addressed in your October 29, 1982 letter, we will issue a clarifying bulletin which will allow for appropriate recognition of overhead expenses of the outpatient hospital.

I trust this revised practice will fully satisfy the HCFA concerns. Please advise if there is any further problem with a speedy approval of the state plan amendment.

> Sincerely,
> /s/ Noble P. Kheder
> Noble P. Kheder
> Director

October 29, 1982

Noble P. Kheder, Director
Michigan Department of Social Services
Post Office Box 30037
Lansing, Michigan 48909

Dear Mr. Kheder:

On August 12, 1982, the Michigan Department of Social Services submitted to this Agency for approval a State plan amendment providing for the payment of outpatient hospital services on a fee-for-service basis. Discussions have been ongoing between our staffs and initially identified problems on the manner of reimbursement have been resolved to our mutual satisfaction.

However, during the week of October 12th the Regional Office became aware of MDSS' Medical Assistance Bulletin # 5360–82–07 issued on July 26, 1982 to hospital providers. As we reviewed the Bulletin's contents and queried MSA staff, it became a matter of concern to us whether the State's practice of not reimbursing the hospital for its overhead expenses associated with the delivery of "Attachment 2-type" services was legal and equitable. ("Attachment 2-type" services are those typically delivered in a physician's office rather than in an outpatient hospital setting.) 42 CFR 440.20 defines covered outpatient hospital services under Medicaid, and HCFA policy has held that it is the hospital that specifies what its outpatient services are. The Bulletin says clearly that all outpatient services are covered—yet, for some of them the hospital receives no payment.

I am writing to let you know that we have sought the guidance of our Central Office staff on this issue, as well as any criteria that HCFA may apply should a substantial number of hospitals withdraw from participation of the Medicaid program as a result of the State's policy. This letter is not a request for additional information needed to further process the Plan as set forth under Section 2177 of P.L. 97–35. If such additional explanatory or clarifying information is needed, we shall notify you by letter.

Helene Stoffey is the Region's contact person for this matter. She can be reached at 312–353–9825.

> Sincerely,
> /s/ Barbara J. Gagel
> Acting Regional Administrator