779 F.2d 1335
 12 Soc.Sec.Rep.Ser. 92, Medicare&Medicaid Gu 35,049
STATE OF MINNESOTA, by its Commissioner of Human Services,
Leonard W. LEVINE, Petitioner,
v.
Margaret HECKLER, Secretary, and United States Department of
Health & Human Services, Respondents.
 No. 85-1001.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1985.
Decided Dec. 12, 1985.
Rehearing Denied Jan. 6, 1986.
 
 John M. Burman, Laramie, Wyo., for petitioner.
 Alan S. Dorn, Francis L. Pergericht, Dept. of Health & Human Services, Chicago, Ill., for respondents.
 Before McMILLIAN and FAGG, Circuit Judges and WOODS,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 The State of Minnesota appeals the Secretary's disapproval of two policies contained in proposed amendments to its Medicaid plan. One policy provides that a recipient who possesses resources in excess of the amounts allowed under Minnesota's Medicaid plan remains eligible to receive Medicaid benefits until fifteen days after notification by the local Medicaid agency (fifteen day policy). The second policy permits local Medicaid agencies to waive the requirement that a recipient dispose of excess resources, if, on a case-by-case basis, the agency finds that disposal of these resources would cause "undue hardship" (waiver policy). We affirm the Secretary's disapproval of these policies.
 
 
 2
 Initially, Minnesota argues that the Secretary's failure to act on the proposed amendments within ninety days of their submission precludes her from disapproving the two policies. See 42 U.S.C. Sec. 1316(a)(1); 45 C.F.R. Sec. 201.3(f). The amendments which contained the two policies were respectively submitted on June 17, 1980, and November 24, 1980. The Secretary disapproved the two policies on November 10, 1981. Minnesota claims that the Secretary's failure to act within the prescribed time results in the automatic approval of the policies, and her untimely disapproval should be rendered void. We disagree.
 
 
 3
 The ninety day limitation for approving a state plan amendment is a procedural rather than a substantive rule. Failure to follow this procedural rule will not invalidate agency action in the absence of prejudice to the complaining party. Dodson v. National Transportation Safety Board, 644 F.2d 647, 652 (7th Cir.1981) (per curiam); EEOC v. Laclede Gas Co., 530 F.2d 281, 284-85 (8th Cir.1976). "Before an agency action may be set aside for lack of punctuality, the aggrieved party must show that it was prejudiced by the delay." Panhandle Cooperative Association v. EPA, 771 F.2d 1149, 1153 (8th Cir.1985).
 
 
 4
 Here, Minnesota has not shown that the Secretary's failure to comply with the ninety day requirement of section 1316(a)(1) has prejudiced the state. In her final decision, the Secretary recognized that her failure to act in a timely manner placed the state "in limbo" regarding the implementation of the policies. Consequently, the Secretary determined that to the extent the state implemented the policies and received federal funds between the end of the ninety day period and her final disapproval in 1981, these federal funds would not have to be returned by the state.
 
 Fifteen Day Policy
 
 5
 Minnesota's fifteen day policy allows a recipient in possession of excess resources to remain eligible for Medicaid until fifteen days after notification by the local Medicaid agency. If the recipient does not dispose of excess resources within fifteen days of notification, the local Medicaid agency then sends the recipient a termination notice under 42 C.F.R. Secs. 431.210, 431.211.
 
 
 6
 Under the Secretary's regulations, a state plan must specify the resource standard for each medically needy group and then must apply its established resource standard for each group. 42 C.F.R. Secs. 435.843(a), 435.845(f). The Secretary determined that Minnesota does not apply its resource standards under its fifteen day policy, because eligibility of a recipient depends upon notification by a local Medicaid agency rather than the amount of resources a recipient holds at a particular time. Because the policy is based upon notification, a recipient holding excess resources remains eligible until fifteen days after notification regardless of when the recipient's change of circumstances occurred or whether the agency had information of a recipient's change in circumstances and failed to act at that time.
 
 
 7
 Furthermore, the Secretary held that a state must promptly redetermine eligibility when it receives information about changes in a recipient's circumstances that may have an effect upon eligibility. 42 C.F.R. Sec. 435.916(c). The Secretary found that under Minnesota's fifteen day policy, eligibility redeterminations can be postponed for an indeterminate period of time, because they are not made until notification by the local Medicaid agency. After notification, Minnesota further delays eligibility redeterminations, because the state gives a recipient an additional fifteen days to dispose of excess resources before sending a termination notice to the recipient. Based on the regulations requiring a state to apply its resource standards and to make prompt redeterminations of Medicaid eligibility, we conclude that the Secretary acted within the scope of her authority in disapproving Minnesota's fifteen day policy.
 
 Waiver Policy
 
 8
 Minnesota's waiver policy allows local Medicaid officials discretion to determine on a case-by-case basis whether disposal of excess resources would cause undue hardship to a recipient. The Secretary disapproved the policy, because it did not provide for a uniform application of the state's resource standards. The Secretary observed that eligibility requirements are based on objective measurable standards. See 20 C.F.R. Sec. 416.110(a). Hence, it is the Secretary's position that in determining Medicaid eligibility, states must use resource standards and methodologies that are uniform for all individuals in a medically needy group. 42 C.F.R. Secs. 435.850(a), 435.840(b).
 
 
 9
 Minnesota's waiver policy provides no guidelines or standards regarding what constitutes undue hardship in any given case. Minnesota specifically chose not to establish guidelines for waiver determinations, leaving such decisions to the discretion of local officials on a case-by-case basis. The Secretary held that Minnesota's failure to establish guidelines regarding what constitutes undue hardship results in "ad hoc, subjective determinations of who is deserving." Therefore, the Secretary determined that the very nature of the waiver policy prevents the state from administering the policy in a uniform manner. We agree.
 
 
 10
 Minnesota claims its waiver policy, which was in effect in 1972, must be approved, because a statutory provision allows the state to retain the eligibility standards it had in effect on January 1, 1972. Section 1396a(f) of Title 42, commonly called the section 209(b) option, allowed participating states that exercised the option to retain their eligibility standards rather than link Medicaid coverage to the more liberal Supplemental Security Income Act (SSI) implemented in 1974. Herweg v. Ray, 455 U.S. 265, 268, 102 S.Ct. 1059, 1062, 71 L.Ed.2d 137 (1982). Under section 209(b), participating states could retain their income and resource ceilings rather than adopt the higher ceilings under SSI. See Winter v. Miller, 676 F.2d 276, 278 (7th Cir.1982). However, states that exercised the section 209(b) option were still required to ensure that recipients bring their income and resources within the state plan's limits. See H.R.Rep. No. 231, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5286-87.
 
 
 11
 Although Minnesota's waiver policy was in effect on January 1, 1972, the policy is a discretionary one which allows local Medicaid officials to waive the state's resource standards if they find that application of the standards would cause undue hardship in a given case. Hence, we conclude that because Minnesota's waiver policy is discretionary and does not establish a specific resource standard, termination of the policy will not violate section 209(b). Notwithstanding the passage of section 209(b), the state's policies under its Medicaid plan that were in effect in 1972 must otherwise be consistent with federal eligibility requirements. See, e.g., Norman v. St. Clair, 610 F.2d 1228, 1235 (5th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981) ("Although Sec. 209(b) allows states to use standards more restrictive than those under the SSI program, the provision can not be viewed as an all-purpose 'grandfathering' clause which effectively legitimizes any and every provision appearing in a state plan in 1972"). Here, the Secretary disapproved Minnesota's waiver policy, because it violated a federal requirement that Medicaid eligibility must be based on uniform standards.
 
 
 12
 As a final argument, Minnesota contends that the Secretary's prior approval of a similar waiver policy precludes her from disapproving the waiver policy which is now before us. Approximately five years before submission of the amendments, the Regional Commissioner of the Department of Health, Education and Welfare had expressly approved a virtually identical amendment to Minnesota's Medicaid plan. This amendment also provided for case-by-case waivers of the state's resource standards based on hardship. The Secretary, in disapproving the current waiver policy, concluded that she has the authority to determine that a previously approved policy is inconsistent with the requirements of Title XIX of the Social Security Act. We agree.
 
 
 13
 The Supreme Court has recently observed that "[a]n initial agency interpretation is not instantly carved in stone," and an agency "must consider varying interpretations and the wisdom of its policy on a continuing basis." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984). Hence, the Secretary is not forever bound to a previous determination that a policy in a state Medicaid plan is valid. Indeed, the Secretary can properly determine that a previously approved policy is at variance with federal requirements. 45 C.F.R. Sec. 201.3(c).
 
 
 14
 We have carefully considered Minnesota's arguments in support of its policies and find them to be unpersuasive. Furthermore, we conclude that the Secretary's decision was not arbitrary and capricious and that her actions were in conformity with the applicable law.
 
 
 15
 Accordingly, we affirm the Secretary's decision.
 
 
 
 *
 The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation