811 F.2d 776
 16 Soc.Sec.Rep.Ser. 285, Medicare&Medicaid Gu 36,057
STATE OF NEW YORK, by its Commissioner of Social Services,
Cesar A. PERALES, Petitioner,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Respondent.
 No. 616, Docket 86-4127.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 5, 1987.
Decided Feb. 10, 1987.
 
 Alan W. Rubenstein, Albany, Asst. Atty. Gen. of N.Y. (Robert Abrams, Atty. Gen. of N.Y., Peter H. Schiff, Deputy Sol. Gen., of counsel), for petitioner.
 Joseph V. Willey, New York City Assistant Regional Counsel, U.S. Dept. of Health and Human Services (Annette H. Blum, Chief Counsel, U.S. Dept. of Health and Human Services, of counsel), for respondent.
 Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and PIERCE, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 This case raises a question about what services can be reimbursed under section 1396a(a)(13)(A) of the Medicaid statute, 42 U.S.C. Secs. 1396-1396p. New York State, by its Commissioner of Social Services, Cesar A. Perales, petitions for review of a decision of the Health Care Financing Administration (the HCFA) of the United States Department of Health and Human Services, disapproving New York State Medicaid Plan Amendment 83-12 (the Amendment), concerning a proposed allocation of the cost of psychiatric outpatient care. Because we find that the Secretary's decision was within the scope of his authority, we affirm.
 
 
 2
 The Medicaid program was enacted to provide federal assistance to states that reimburse health care providers for the costs of medical treatment of needy individuals. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). A state that chooses to participate in the Medicaid program must submit a plan describing the types of care the program will cover and the rates at which health care providers will be reimbursed for their services. If the Secretary of Health and Human Services approves the plan, the state becomes eligible for federal funds. Florence Nightingale Nursing Home v. Perales, 782 F.2d 26, 27 (2d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). A state's plan may provide coverage for numerous types of care, such as inpatient and outpatient hospital services, X-rays, dental services, physical therapy and prescription drugs and devices, see 42 U.S.C. Sec. 1396d(a)(1)-(18). The state must establish a reimbursement rate for each service provided, in accordance with federal guidelines.
 
 
 3
 On June 30, 1983 the State submitted a revised rate-setting method for its psychiatric hospitals--the Amendment--to the HCFA. The Amendment provided that the unreimbursed costs incurred by the hospitals in furnishing outpatient care to former psychiatric inpatients would be included in the Medicaid reimbursement rate for inpatient services. On August 12, 1983, an associate regional administrator of the HCFA advised the State that his office would recommend that the Amendment be disapproved. On October 3, 1983, the HCFA officially rejected the Amendment. The State filed a timely request for review, and on July 3, 1986, the HCFA administrator affirmed the disapproval of the Amendment. The July 3 determination was the final decision of the Secretary, and this appeal followed.
 
 
 4
 Both sides to the dispute concede that the Amendment's validity depends on construction of 42 U.S.C. Sec. 1396a(a)(13)(A), which sets the standards for state Medicaid plans covering inpatient costs.[1] The crux of the dispute is whether that provision allows a State plan for medical assistance, in setting the rate of reimbursement for inpatient care, to include outpatient costs that are a likely consequence of the inpatient treatment. In defending the Amendment, the State relies on the statutory requirement that its rate-setting methodology "take into account the situation of hospitals which serve a disproportionate number of low income patients," Sec. 1396a(a)(13)(A). Having determined that all of its psychiatric hospitals serve a "disproportionate number of low income patients," the State contends that outpatient care, for which low income patients will be unable to pay, will inevitably be required following inpatient psychiatric treatment and, indeed, seems to prevent further, more expensive inpatient treatment. Therefore, it argues, to "take into account the situation" of these hospitals, the costs of the outpatient care should be included in calculating the repayment rate for the inpatient care.
 
 
 5
 As a preliminary matter, we note that "courts must exhibit particular deference to the Secretary's position with respect to legislation as intricate as [the Medicaid statute]." DeJesus v. Perales, 770 F.2d 316, 327 (2d Cir.1985) (Friendly, J.) (citing Connecticut Dep't of Income Maintenance v. Heckler, 471 U.S. 524, 532, 105 S.Ct. 2210, 2215, 85 L.Ed.2d 577 (1985)), cert. denied, --- U.S. ----, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). As the Supreme Court recently held, "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however ... the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (footnotes omitted). The Secretary's view that only inpatient costs may be reimbursed under section 1396a(a)(13)(A) is demonstrated not only by the agency's decision in this case, but also by the guiding federal regulations for that section, 42 C.F.R. Secs. 447.250-447.256, that repeatedly refer to payment for "inpatient hospital services." E.g., 42 C.F.R. Sec. 447.253(b)(1)(i). Thus, the court in Michigan Hosp. Ass'n v. Department of Social Services, 555 F.Supp. 675, 677 (E.D.Mich.1983), adopted the Secretary's position that 42 U.S.C. Sec. 1396a(a)(13)(A) does not cover outpatient services. See also, Kean v. Heckler, 799 F.2d 895, 899-902 (3d Cir.1986). We must follow the Secretary's construction of section 1396a(a)(13)(A) unless we find that it conflicts with unambiguous Congressional intent or is not "a permissible construction of the statute."
 
 
 6
 The legislative history of the statute supports the Secretary's view that outpatient costs may not be included in calculating inpatient reimbursement rates under section 1396a(a)(13)(A). The forerunner to section 1396a(a)(13)(A) allowed reimbursement for the "reasonable cost of inpatient hospital services," 42 U.S.C. Sec. 1396a(a)(13)(D) (repealed 1981), clearly excluding outpatient costs. Section 1396a(a)(13)(A) instead permits reimbursement of "costs which must be incurred by efficiently and economically operated" hospitals but also retains a specific reference to inpatient services: the rates must be sufficient "to provide care and services ... to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality." Thus, while section 1396a(a)(13)(A) may employ more ambiguous language than its predecessor, it still discusses coverage of inpatient services without mention of outpatient services.
 
 
 7
 Similarly, the conference committee report on section 1396a(a)(13)(A) shows no intention by Congress to add outpatient costs to the reimbursement of inpatient costs. The conference committee report explains that section 1396a(a)(13)(A) "requires that State payments for inpatient hospital services be 'reasonable and adequate.' " H.R. Conf. Rep. No. 208, 97th Cong., 1st Sess. 962, reprinted in 1981 U.S. Code Cong. & Admin.News 1010, 1324 (emphasis added). The legislative history is silent on adding the costs of outpatient services to the calculation. One could certainly conclude from examining the statute and the legislative history that Congress merely intended to change the standard for reimbursement for inpatient care from "reasonable costs" to costs "incurred by an efficiently and economically operated facility," and that the subject of the reimbursement--inpatient services--remained unchanged. See S. Rep. No. 139, 97th Cong., 1st Sess. 478, reprinted in 1981 U.S. Code Cong. & Admin.News 396, 744. Considering that Sec. 1396a(a)(13)(A) was part of a legislative effort to reduce Medicaid costs, creatively viewing it to include outpatient costs that were formerly excluded would be a strained interpretation. See S. Rep. No. 139, 97th Cong., 1st Sess. 474, reprinted in 1981 U.S. Code Cong. & Admin.News 396, 740.
 
 
 8
 The structure of the statute provides further support for the Secretary's position. Reimbursement for outpatient services is covered elsewhere in the statute by a general provision requiring reimbursement at rates "consistent with efficiency, economy, and quality of care." 42 U.S.C. Sec. 1396a(a)(30). The Secretary's regulations implementing section 1396a(a)(30), 42 C.F.R. Secs. 447.300-447.334, explicitly refer to outpatient services and, indeed, set a ceiling on reimbursement for outpatient services. 42 C.F.R. Sec. 447.321. Allowing the State to reimburse outpatient costs through section 1396a(a)(13)(A) would circumvent section 1396a(a)(30): Since the Amendment would include unreimbursed outpatient costs in setting inpatient rates, the ceiling on outpatient costs would be avoided.
 
 
 9
 Thus, we cannot say that the statute unambiguously supports the State or that the Secretary's construction is impermissible. Therefore, we must defer to the Secretary's view that outpatient costs may not be included in calculating reimbursement rates under section 1396a(a)(13)(A). See Chevron U.S.A. Inc., 467 U.S. at 842-43, 104 S.Ct. at 2781-82. Of course, the advisability of reimbursing hospitals for follow-up outpatient care of psychiatric patients, and whether the State can have the outpatient reimbursement rate for such patients increased, are not issues before us.
 
 
 10
 The State's other contentions require little discussion. The former section of the statute setting inpatient rates required that the plan "be developed by the State and reviewed and approved by the Secretary." 42 U.S.C. Sec. 1396a(a)(13)(D). The new section requires rates "which the State finds, and makes assurances satisfactory to the Secretary," meet statutory levels. 42 U.S.C. Sec. 1396a(a)(13)(A). The State contends that this change limits the scope of the Secretary's review to the actual rates, rather than the underlying rate-setting methodology. The language of section 1396a(a)(13)(A) does not support such a narrow view of the Secretary's authority. Moreover, a broader view of the Secretary's role is clearly supported by the federal regulations, which require that the state plan "specify comprehensively the methods and standards used by the agency," 42 C.F.R. Sec. 447.252, and that the state make assurances satisfactory to the HCFA each time it changes its "methods and standards," 42 C.F.R. Sec. 447.253.
 
 
 11
 Finally, the State suggests that the Amendment should be "deemed accepted" because the Secretary did not reject it within 60 days of its submission. Although the statute allows the Secretary 90 days to reject a plan, 42 U.S.C. Secs. 1316(a)(1), 1396n(f), a temporary federal regulation, in effect at the time the Amendment was submitted, required that assurances supporting a state Medicaid plan be accepted or rejected within 60 days. 42 C.F.R. Sec. 447.256(a) (1983), 46 Fed.Reg. 47964, 47972 (1981). The Amendment was submitted on July 5, 1983 and officially rejected on October 3, 1983, a span of 90 days. On August 12, 1983, however, the HCFA notified the State that its Amendment, and the assurances supporting it, faced disapproval since "the addition of outpatient services costs as allowable costs in the determination of inpatient hospital rates does not comply with the requirements [of section 1396a(a)(13)(A) ] because the costs do not constitute costs relative to the provision of the inpatient hospital care and services." Thus, the State was on notice within 60 days that its plan would be rejected. Even if this notice was not in strict compliance with the regulation, it constituted actual notice sufficient to render the error harmless. See Small Refiner Lead Phase-Down Task Force v. United States Envtl. Protection Agency, 705 F.2d 506, 549 (D.C.Cir.1983); cf. Whelan v. Brinegar, 538 F.2d 924, 927 (2d Cir.1976) (per curiam). Moreover, a separate federal regulation vests the Secretary with continuing authority to determine the approvability of a State plan. 45 C.F.R. Sec. 201.3(c). See Minnesota v. Heckler, 779 F.2d 1335, 1338-39 (8th Cir.1985). Therefore, even if the Amendment were "deemed approved," the October 3 decision served to revoke that approval.
 
 
 12
 For the foregoing reasons, the determination of the Secretary is affirmed.
 
 
 
 [1]
 42 U.S.C. Sec. 1396a(a)(13)(A) provides that:
 A State plan for medical assistance must-- ...
 (13) provide--
 (A) for payment (except where the State agency is subject to an order under section 1396m of this title) of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care (under conditions similar to those described in section 1395x(v)(1)(G) of this title), for lower reimbursement rates reflecting the level of care actually received (in a manner consistent with section 1395x(v)(1)(G) of this title) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports.