Elroy P. KOCHER, Petitioner-Appellant,†

v.

DEPARTMENT OF HEALTH & SOCIAL SER-
VICES of the State of Wisconsin, Respondent.

Court of Appeals

*No. 88-2341. Submitted on briefs June 6, 1989.—Decided July
20, 1989.*

(Also reported in 448 N.W.2d 8.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *John W. Strasburg*, of Milwaukee.

For the respondent the cause was submitted on the briefs of *Donald J. Hanaway*, attorney general, and *Donald P. Johns*, assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Elroy P. Kocher (Elroy) appeals from a judgment entered in favor of the Wisconsin Department of Health and Social Services (DHSS), which affirmed an administrative decision denying his eligibility for medical assistance (MA) benefits. We conclude that Elroy was not prejudiced by any inadequacy in his notice of denial, and that as of the fall, 1987, review of his original MA award, Elroy was no longer eligible for MA benefits by virtue of his divestment of his homestead. Therefore, we affirm the judgment of the trial court.

The facts are undisputed. On September 19, 1986, Elroy was admitted to the Glenfield Health Care Center (Glenfield) after falling in his home. A handwritten memo of Elroy's doctor indicates that on September 22,

1986, he anticipated that Elroy would return to his home after eight to twelve weeks of rehabilitation.

On September 29, 1986, Elroy conveyed his residence for no consideration to his daughter, Norann O. Kocher (Norann) and his son, Bernell, who in turn conveyed the property to the Kocher Family Trust. Norann and Bernell were co-grantors of the property, and trustee and successor-trustee for the trust. Elroy then leased the premises from the trust, to be used as his residence upon his discharge from Glenfield. Elroy subsequently applied for MA benefits. On November 13, 1986, he received notice that he was eligible for MA benefits, effective October 8, 1986.

Elroy returned to his home on February 14, 1987. However, he was admitted to St. Michael Hospital on February 20 for pneumonia observation. The next day, Elroy fell and broke his left hip and wrist. He had hip surgery on February 28, and suffered a stroke on March 2. Elroy returned to Glenfield on April 7, 1987, and resides there to date.

During the early fall of 1987, the DHSS conducted an annual review of Elroy's MA status. At that time, Elroy was not expected to return to his home. Also, the DHSS discovered the transfer of his residence. On October 6, 1987, Elroy received notice that his MA benefits would be terminated as of November 1, and noted its reasons as follows: "[n]o person is determined eligible. (49.19(4)(A); 49.47(4)(A) STATS; 7 CFR 273.1)."

In a letter received by the DHSS on October 22, Elroy's attorney requested "an appeal or fair hearing" of the termination decision. The attorney also requested the written basis upon which the decision was made. On November 2, 1987, Elroy's attorney received a "case summary for fair hearing" from the DHSS. Paragraph V of the summary provided as follows:

## COUNTY REASON FOR ACTION

Mr. Kocher is a 78 year old who entered the nursing home on 9/19/86. On 11/4/86 application was made on his behalf. A temporary stay letter dated 11/3/86 indicates the client would require an additional 30 to 60 days in the nursing home. MA was opened effective 10/8/86. At time of review worker questioned the client's daughter, Norann Kocher, about the property her father deeded to her on 9/29/86. A Wisconsin Real Estate Transfer Return lists the value of this real estate at $54,900.00. Mr. Kocher has disposed of this homestead for less than fair market value within the 2 years from the eligibility review. This $54,900.00 is presumed to be a divestment in order to be eligible for MA. The case was to be closed effective 10/31/87, but has been reinstated pending the hearing. Mr. Kocher continues to be a nursing home resident. MA Handbook P25b.

The MA Handbook states on page 25b that:

### Homestead Property

Homestead property is an exempt asset except for residents of skilled care nursing facilities, intermediate care facilities, and inpatient psychiatric facilities. The following special rules apply to them:

A person who is a resident of an SNF, ICF or inpatient psychiatric facility who disposed of his/her homestead for less than fair market value on or after July 2, 1983, but within 2 years before or at any time after his/her most recent MA application or eligibility review is presumed to have divested in order to be eligible for MA.

Divestment of homestead property is not a bar to eligibility if:

1. S/he can reasonably be expected to be discharged and return to that homestead;

2. The title to the homestead was transferred to the person's spouse or child. The child must be either under age 21 or be blind or totally and permanently disabled as determined by BSSDI.

   Note: The eligibility of the nursing home resident is not affected, i.e., divestment does not occur, if the spouse or child to whom the homestead was transferred gives away, sells for less than market value, or bequeaths the homestead to somebody else.

3. The person can show that s/he intended to dispose of the homestead either at a fair market value or for other valuable considerations.

4. The agency determines that denial of eligibility would work undue hardship on the person.

A fair hearing was held pursuant to Elroy's request on December 29, 1987. In a decision dated February 8, 1988, the hearing examiner affirmed the termination of Elroy's MA benefits. That decision was affirmed by order of the DHSS on March 9, 1988. Finally, the trial court affirmed the DHSS order in a judgment entered on November 15, 1988. It is from this judgment that Elroy now appeals. Elroy raises two appellate issues: (1) whether he is eligible for MA benefits notwithstanding the conveyance of his residence; and (2) whether his original notice of MA benefit termination was adequate.

## STANDARD OF REVIEW

Resolution of this appeal involves an application of statutes to an undisputed set of facts. Application of and interpretation of a statute to a given set of facts by an administrative agency is a conclusion of law, and the agency's interpretation is given deference if there is a

175

rational basis for the agency's actions.[1] Great weight should be given to an agency interpretation of its own rules unless plainly erroneous.[2] An appellate court's scope of review of an agency decision is the same as a trial court's.[3]

## MA ELIGIBILITY AFTER HOMESTEAD DIVESTMENT

Eligibility for MA benefits is determined by Chapter 103 of the DHSS regulations. In order to receive MA benefits, an applicant's income and resources must fall within the parameters established in secs. 49.47(3) and (4), Stats. Generally, the homestead in which the applicant lives is regarded as an exempt asset in computing MA eligibility. [4] However, if an individual who is a resident of a nursing home divests his home for less than fair market value within two years of a review of his MA eligibility, the divestment is presumed to have been made in contemplation of receiving MA, and will bar MA eligibility.[5] The MA applicant or recipient may

---

[1]*See* sec. 227.52, Stats; *Wisconsin's Envtl. Decade v. Department of ILHR*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981).

[2]*Josam Mfg. Co. v. State Bd. of Health*, 26 Wis. 2d 587, 601, 133 N.W.2d 301, 309 (1965).

[3]*City of Appleton v. Transportation Comm'n of Wisconsin*, 116 Wis. 2d 352, 356, 342 N.W.2d 68, 70 (Ct. App. 1983).

[4]Wis. Adm. Code sec. HSS 103.06(4) (Jan. 1987): "Homestead Property. (a) A home owned and lived in by an applicant or recipient is an exempt asset."

[5]Wis. Adm. Code sec. HSS 103.02(3) (Feb. 1988):

> . . ..
>
> *(c) Divestment as a barrier to eligibility.* 1. Divestment of a homestead by any person residing as an inpatient in an SNF, ICF or inpatient psychiatric facility within 2 years prior to the date of his or her most recent application for MA or any review of his or her

rebut this presumption by furnishing convincing evidence to establish that the transaction was exclusively for some purpose other than obtaining MA.[6] Also, one way by which a divestment may be removed as a barrier to eligibility is if it is shown that the institutionalized applicant or recipient can reasonably be expected to be discharged from the institution and return to the homestead.[7]

---

eligibility for MA, shall, unless shown to the contrary, be presumed to have been made in contemplation of receiving MA. Divestment bars eligibility for MA except as provided in subds. 2 and 3 and par. (d).

[6]Wis. Adm. Code sec. HSS 103.02(3)(c) (Feb. 1988):

. . ..

2. To rebut the presumption that divestment was made in contemplation of receiving aid, the applicant shall furnish convincing evidence to establish that the transaction was exclusively for some other purpose. For example, the applicant may rebut the presumption that the divestment was done in contemplation of receiving aid by showing by convincing evidence that, at the time of divesting, the applicant had provided for his or her future maintenance needs and medical care.

[7]Wis. Adm. Code sec. HSS 103.02(3) (Feb. 1988):

. . ..

(d) *Removing divestment as a barrier to eligibility.*

. . ..

3. An individual who is an inpatient in a SNF, ICF or inpatient psychiatric facility who has been determined to have divested a homestead, may be found eligible if:

a. It is shown to the satisfaction of the department that the individual can reasonably be expected to be discharged from the medical institution and return to that homestead;

b. The title to the homestead was transferred to the individual's spouse or child who is under age 21 or is blind or totally and permanently disabled according to a determination made by the department's bureau of social security disability insurance;

c. It is shown to the satisfaction of the department that the individual intended to dispose of the homestead either at fair market value or for other valuable consideration; or

177

In the case at hand, the DHSS conducted an annual review of Elroy's MA eligibility status in October, 1987. It was determined that Elroy was no longer able to reasonably expect that he would return to his home. Therefore, the divestment could no longer be removed as a barrier to eligibility for MA. The homestead was included as an asset, pursuant to Wis. Adm. Code sec. HSS 103.02(3)(c), and its value rendered Elroy's level of assets too high to receive MA. Also, Elroy divested his home within two years of the October, 1987 review for no consideration, and the record does not contain any convincing evidence which establishes that the transfer to his children was conducted for some purpose other than to aid in obtaining MA. Furthermore, the record does not reflect that Elroy would suffer undue hardship if his MA eligibility were denied. We conclude that Elroy's homestead was properly considered as an asset in the DHSS review of his MA eligibility status, and that its inclusion rendered him ineligible for MA.

## PROPER NOTICE OF TERMINATION OF MA BENEFITS

Elroy also argues that he was not given proper notice of the DHSS decision to terminate his MA benefits. The required contents of the notice are listed in Wis. Adm. Code sec. HSS 104.01(9)(b)1, as well as its federal counterparts 42 C.F.R. sec. 431.210 (1987) and 45 C.F.R. sec. 205.10(a)(4)(i)(B) (1988). A proper notice of termination must note: "(a) The nature of the intended action; (b) The reasons for the intended action; (c) The specific regulations supporting the action; (d) An expla-

---

d. It is determined by the department that the denial of eligibility would work undue hardship on the individual.

nation of the recipient's right to request a fair hearing; and, (e) The circumstances under which assistance will be continued if a hearing is requested."[8] Such notice must be sent to the recipient's last known address "before the date upon which the action would become effective."[9]

The original notice sent to Elroy on October 6, 1987, stated that his MA benefits would be terminated as of November 1 because "[n]o person is determined eligible. (49.19(4)(A); 49.47(4)(A)STATS; 7 CFR 273.1)." That notice only satisfied the first, second and third elements noted above. However, the inadequacy of the notice was not prejudicial to Elroy, because the notice was supplemented prior to the termination of benefits, and thus Elroy received proper notice in a timely manner. [10] Elroy's attorney requested both a hearing and a written explanation of the reasons for termination in his letter of October 22. The November 2 "case summary" sent in response to this letter clearly elaborated the nature and reasons for the termination action. It also referred counsel to page 25b of the MA handbook, which describes the ramifications of divesting homestead property within two years of an MA eligibility status review. The sum-

---

[8]Wis. Adm. Code sec. HSS 104.01(9)(b)1. *See also* 42 C.F.R. 431.210 and 45 C.F.R. 205.10(a)(4)(i)(B).

[9]*Id.*

[10]*See State of Minnesota v. Heckler,* 779 F.2d 1335 (8th Cir. 1985). " 'Before an agency action may be set aside for lack of punctuality, the aggrieved party must show that it was prejudiced by the delay.' " 779 F.2d at 1337 (citation omitted). We note that federal case law may be used as persuasive authority in construing a state statute patterned after a federal rule. *Racine Educ. Ass'n v. Board of Educ. for Racine Unified School Dist.,* 129 Wis. 2d 319, 326, 385 N.W.2d 510, 512 (Ct. App. 1986).

mary did not address Elroy's right to request a hearing, but a challenge on this issue is moot given the fact that his attorney had already made such a request. Finally, the summary indicated that Elroy's benefits would be "reinstated pending the hearing." Therefore, we conclude that neither the fairness of the proceedings nor the correctness of the action taken by the DHSS was impaired by its failure to provide Elroy with proper notice of the initially established November 1 termination.

This conclusion is consistent with federal case law which determines that due process requires that claimants facing termination of public assistance benefits must be given timely and adequate notice detailing the reasons for a proposed termination, and providing an effective opportunity to defend, because such notice is especially important to protect claimants against proposed agency action resting on incorrect or misleading factual premises, or on misapplication of rules or policies to the facts of particular cases.[11] In the case at hand, Elroy received a detailed notice of the pending termination of his MA benefits prior to termination. Also, Elroy had from November 2 until December 29, the date of his hearing, to investigate the termination and prepare his defense. Thus, notice here was timely and provided an effective opportunity to defend.

Because the department correctly applied its rules, Wisconsin statutes and federal regulations concerning

[11]*See Goldberg v. Kelly,* 397 U.S. 254, 267-68 (1970); *Ortiz v. Eichler,* 794 F.2d 889, 893 (3d Cir. 1986).

medical assistance benefits, the trial court was correct in affirming its actions.

*By the Court.*—Judgment affirmed.